## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

**KRISTOFFER MARTIN et al,**
**individually and on behalf of**
**all others similarly situated,**

**Plaintiffs,**

**CASE NO. 20-cv-279**

**v.**

**EATSTREET, INC., et al.**

**Defendant.**

## MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION
## FOR PRELIMINARY APPROVAL OF
## CLASS AND COLLECTIVE ACTION SETTLEMENT

### INTRODUCTION

The Parties have filed a Joint Motion for Preliminary Approval of Class and Collective Action Settlement reached between Plaintiffs and EatStreet. The Settlement Agreement and Release (ECF No. 138 "Agreement") provides for a total settlement payment of $1,240,000.00, inclusive of attorneys' fees and costs. The settlement is fair and reasonable, as it fully and adequately satisfies this Court's criteria for such settlements. As such, the Parties respectfully request that the Court preliminarily approve the Agreement, approve the Parties' Joint Stipulation for Class Certification Pursuant to FED. R. CIV. P. 23 (ECF No. 138-2), approve Plaintiffs Kristoffer Martin, Calvin Jones and Scott Quattrucci ("Plaintiffs") as representatives for the Collective Class and Rule 23 Class, approve Hawks Quindel, S.C. as counsel for the classes ("Class Counsel"), approve the mailing of the Notice

of Class Action Settlement (ECF No. 138-3" Notice"), and set forth the procedure by which the Parties may seek final approval of the Agreement.

## STATEMENT OF FACTS

### I.     PROCEDURAL HISTORY

On March 26, 2020, Plaintiff Kristofer Martin, on behalf of himself and other similarly situated Delivery Drivers, filed a class and collective action lawsuit against EatStreet, Inc. ("EatStreet"). (ECF No. 1.)[1] The operative complaint, pending in front of Judge Peterson in the Western District of Wisconsin, alleges that EatStreet violated both state and federal wage and hour laws. Early in this litigation, the Parties agreed to discuss potential resolution of the claims alleged on a collective and class-wide basis. (Declaration of Attorney Summer H. Murshid, ("Murshid Decl."), ECF No. 141, ¶2.) On May 22, 2020, prior to EatStreet answering Plaintiffs' Amended Complaint, the Parties stipulated to stay the case and toll the statute of limitations to facilitate mediation. (ECF No. 35.) The Parties used JAMS for a mediation that occurred on October 21, 2020, but was unsuccessful. (Murshid Decl., ECF No. 141, ¶3.) EatStreet filed two Motions to Dismiss but the Parties were ultimately able to work through the assertions raised therein such that the Court did not need to issue an order after Plaintiffs filed their Third Amended Complaint. (ECF No. 84.)

_____

[1] Since the initial filing, additional Plaintiffs have been added to represent the classes after Plaintiff Karen Felde (who was added by the second amended complaint) was compelled to arbitration and to resolve the arguments asserted by EatStreet in a Motion to Dismiss (ECF Nos. 61-62.)

On January 15, 2021, Plaintiffs filed for conditional class certification, pursuant to 29 U.S.C. § 216(b). (ECF No. 85.) The matter was fully briefed as of February 22, 2021. (ECF Nos. 86-124.) On June 9, 2021, Plaintiffs took the FED.R.CIV.P. 30(b)(6) Deposition of EatStreet's designated corporate witnesses. (Murshid Decl., ECF No. 141, ¶4.) EatStreet produced thousands of pages of documents and tens of thousands of lines of data responsive to Plaintiffs' first set of discovery, and until the matter was settled, continued to do so on a rolling basis. (Murshid Decl., ECF No. 141, ¶5.) This included reports showing the deliveries made, miles driven, and pay data on a class-wide basis. (Murshid Decl., ECF No. 141, ¶6.) Class Counsel was able to use this data to create a damages model based on three categories: minimum wage damages, overtime wage damages and agreed upon wage damages. (Murshid Decl., ECF No. 141, ¶7.)[2]

At the same time Plaintiffs filed for conditional class certification, on January 15, 2021, the Parties filed a joint stipulation to compel to arbitration those individuals who had opted into the federal litigation but had signed arbitration agreements with EatStreet. (ECF No. 83.) Arbitrations were filed by twenty-seven (27) individuals asserting the same claims as those asserted in the federal litigation. Those cases are not part of the settlement pending before this Court. (Murshid Decl., ECF No. 141, at ¶9.)

## II.    SETTLEMENT BACKGROUND

---

[2] The damages models upon which Plaintiffs' claims were calculated were shared with EatStreet's counsel and the mediators in advance of each mediation session. (Murshid Decl., ECF No. 141, ¶8.)

After the initial mediation in October 2020, the Parties continued with litigation, including briefing conditional class certification, as explained above. (Murshid Decl., ECF No. 141, at ¶10.) However, as the case progressed, the Parties also continued to evaluate the risks and value of potential settlement. (Murshid Decl., ECF No. 141, at ¶11.) In light of those factors, the Parties agreed to mediate a second time on June 24, 2021, with the Honorable Magistrate Judge David Jones (ret). (Murshid Decl., ECF No. 141, at ¶12.) Although the Parties were again unable to resolve the claims that day, they continued to work diligently with Judge Jones toward a potential settlement framework. (Murshid Decl., ECF No. 141, at ¶13.) This included the exchange of additional data, which led the Parties to agree to a third day of mediation on August 20, 2021. (Murshid Decl., ECF No. 141, at ¶14.) Again, though unable to reach a final agreement on terms during mediation that day, the Parties continued direct negotiations through counsel, as well as through Judge Jones. (Murshid Decl., ECF No. 141, at ¶15.) On September 24, 2021, having agreed to a framework for furthering settlement discussions, the Parties filed a Joint Stipulation for a 90-day Stay in the litigation. (ECF No. 133.) The goal of the requested stay was to allow the Parties to continue to work with their respective clients on certain matters that previously had prevented them from reaching a deal on the material terms of settlement.  (Murshid Decl., ECF No. 141, at ¶16.) On September 27, 2021, the Court denied the Parties' motion but extended the class certification deadline to give the Parties a final chance to reach settlement. (ECF

No. 133.) On October 19, 2021, the Parties were able to do just that, and filed a Notice of Settlement with the Court. (ECF No. 135.)

After notifying the Court that the Parties had reached a settlement, the Parties worked diligently to reduce their agreement to writing and finalize the other necessary details for the settlement – including the language in the Notice of Class Action Settlement, finalizing a *pro rata* allocation of the settlement funds amongst the classes' members, and preparing the other documents necessary to memorialize their agreement. (Murshid Decl., ECF No. 141, at ¶ 17; Declaration of Benjamin Johnson, ("Johnson Dec.", ECF No. 142, at ¶2.)

As a part of the settlement terms, the Parties agreed to (and have filed) a Joint Stipulations for Certification of the Fed. R. Civ. P. 23 and 29 U.S.C. 216(b) collective classes. (ECF Nos. 139 and 140.) For settlement purposes only, the Parties stipulated to certifying the following classes:

**The Rule 23 Class**.

All persons who have worked in Wisconsin as delivery drivers for EatStreet between March 26, 2018 and June 19, 2021 whose names appear on Exhibit A to the Settlement Agreement. (ECF No. 138.)

**The 29 U.S.C. 216(b) Class**

All persons who appear on Exhibit A and have worked in Wisconsin as delivery drivers for EatStreet who have returned consent forms and whose claims are before the Court, and all persons who worked in Wisconsin as

delivery drivers between March 26, 2018 and June 19, 2021, who timely file consent forms in response to the Notice to opt-in to the case. (ECF No. 138.)

The Parties worked collaboratively to memorialize the settlement terms in the Agreement. (ECF No. 138.) The terms of the Agreement, stated briefly, are as follows:

–   There is a $1,240,000.00 Settlement Fund to be divided into a 50% Wisconsin Settlement Fund and a 50% FLSA Settlement Fund, ***after*** accounting for attorneys' fees and costs and the allocation of service payments to Plaintiffs;

–   For settlement purposes only, the Parties agree to stipulate to certify a FED. R. CIV. P. 23 Class Action and 29 U.S.C. 216(b) collective action; said stipulations have been filed herewith. (ECF Nos. 139, and 140.);

–   Payments will be made in two installments: the first of $620,000 due thirty (30) days from the Court's final order and the second of $620,000 due within ninety (90) days of the first payment, or on the first business day of the quarter immediately following the quarter in which the first payment was made;

–   To waive FLSA claims as alleged in the Complaint, a FLSA collective class member must timely and validly complete and return a consent form in response to one of the notices provided for in the Agreement. If a class member has a claim under the FLSA collective class and has timely and validly completed and returned the consent form, such class member will

receive his or her *pro rata* portion of the FLSA Settlement Fund in an amount not to fall below the figure set forth for such individual in Exhibit A to the Agreement. Any putative member of the FLSA collective class that has already asserted his/her FLSA claims by causing a consent to be filed in this matter need not file another consent form in response to any of the Agreement's subsequent notices;

– If a class member does not exclude him/herself from the settlement in compliance with the opt-out and exclusion procedures set forth in the Agreement, he or she will be entitled to at least his or her *pro rata* portion of the Wisconsin Settlement Fund in an amount not to fall below the figure set forth for such individual in Exhibit A to the Agreement;

– If a class member does not file a timely consent form in response to the notices provided pursuant to the Agreement, then his or her share from the FLSA Settlement Fund will be reallocated to the rest of the Collective Class members. No person that fails to file a consent to join their FLSA claims in this matter shall be deemed to have effectuated a release of FLSA claims under the Agreement;

– Any settlement funds that are not paid due to an individual's timely exclusion of him/herself from the settlement, shall be reallocated to the remaining Rule 23 Class Members. Such individuals who exclude themselves from the Rule 23 Class settlement shall not be deemed to have

released their Wisconsin wage and hour claims as provided by the
Agreement;

– Any settlement funds that remain undeliverable, returned or uncashed
within one hundred twenty (120) days after the second payment is made
shall be paid to the a predetermined Cy Pres recipient, The National
Institute for Workers' Rights;

– Plaintiff Martin will receive a service payment of $7,000.00 from the
Settlement Fund in light of his efforts in bringing this matter on behalf of
other similarly-situated individuals and obtaining a recovery for such
individuals, as well as his significant time commitment in responding to
discovery, meeting with the mediator to discuss potential settlement
options, and working diligently to aid Class Counsel's understanding of
EatStreet's pay practices;

– Plaintiffs Quattrucci and Jones will receive a service payment of $4,000
each for their efforts in bringing this matter on behalf of similarly-
situated individuals, as well as for working diligently with class counsel to
help find witnesses and working diligently to aid Class Counsel's
understanding of EatStreet's pay practices; and

– Class Counsel will petition for a payment of $413,333.33 in attorneys' fees
and not more than $40,000.00 in costs incurred in this matter.

This Agreement is fair and was reached at arm's length and in recognition of
the risks faced by all Parties. (Murshid Decl., ECF No. 141, at ¶ 18; Johnson Dec.,

ECF No. 142, at ¶3.) The settlement is structured to maximize payment to participating Class Members as there is no claims process to participate in the Rule 23 Class portion of the settlement and funds that are not claimed for excluders or putative class members who do not opt-in will be reallocated to other class members. (Murshid Decl., ECF No. 141, at ¶ 19.)  No funds are reverting to EatStreet. (Murshid Decl., ECF No. 141, at ¶ 20.)  The notice proposed by the Parties adequately informs the class members of their right to participate in the settlement, to exclude themselves from the settlement, and to object to the settlement, as well as the legal implications of each of these actions. (ECF No. 138-3) Because the settlement is fair and was reached by the Parties at arm's length, the Parties jointly request that the Court grant preliminary approval of the Agreement and allow Class Counsel to mail the class notices and consent form in the manner set forth in the attachments designated as Exhibits A-F to the Agreement.

## **ARGUMENT**

### **I.    Preliminary approval of the Agreement is appropriate.**

#### **A.    The criteria for preliminary approval have been satisfied.**

Resolution of class action litigation by settlement is favored by the federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1996 (7th Cir. 1996). Some courts have found that employees can bargain, waive, or modify their right to recovery under the FLSA only if the parties agree to the terms of the settlement and the court approves the settlement as a fair and reasonable resolution of a bona fide dispute over alleged violations of the FLSA provisions, and the settlement is entered as a stipulated

judgment. *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

Similarly, the settlement of a FED. R. CIV. P. 23(b)(3) class action may be approved only if: (1) the individual class members are afforded a new opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. FED. R. CIV. P. 23(e).

In reviewing a proposed settlement agreement, courts "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. *United Founders Life Ins. Co. v. Consumers National Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations omitted). Other factors the courts are to consider are the complexity, expense, and likely duration of the litigation; reaction of the class to the settlement; the stage of the proceedings and the amount of discovery completed; the risks of establishing liability; the risks of establishing damages; the ability of EatStreet to withstand greater judgment; and the range of reasonableness of the settlement funds to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

Preliminary approval of a class action settlement allows putative class members to receive notice of the proposed settlement terms and the date and time for the fairness hearing at which putative class members may be heard and submit

evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement agreement. *See* Manual for Complex Litigation at §§ 13.14, 21.632.

### 1. The proposed Agreement is fair, reasonable, and adequate.

The Agreement's terms outlined above are fair and reasonable for the Parties. Real disputes exist between the Parties as to whether liability exists in this case and, if liability were proven, the extent of the damages. Specifically, EatStreet's business model of treating delivery drivers as employees and guaranteeing certain wages, while also allowing drivers to keep tips, is unique within the "gig" delivery driver industry. As a result, the issues raised by Plaintiffs' complaint would present novel questions about the applicability of the FLSA to EatStreet's model. For instance, the Parties disagree on: (i) whether EatStreet's method of accounting for Plaintiffs' vehicle expenses violated the FLSA and/or Wisconsin law, (ii) the manner of computing reasonable reimbursement rates underlying the computation of Plaintiffs' damages, (iii) the applicability of state and federal tip credit rules as it relates to the computation of driver pay creditable to EatStreet, (iv) Plaintiffs' ability to prove a willful violation of the FLSA, and (v) the amount/extent of any award of liquidated damages and/or civil penalties due to the classes' members. (Murshid Decl., ECF No. 141, at ¶ 21; Johnson Dec., ECF No.142, at ¶4.)

The claims are relatively small for each individual class member as they depend on each class members' length of employment, hours spent performing work as a delivery driver for EatStreet, and the number of miles driven in performance of

his or her work as a delivery driver. (Murshid Decl., ECF No. 141, at ¶ 22.) Under the Agreement, the average recovery per class member is $444.42 after deducting the service payments and consideration for attorneys' fees and costs. (Murshid Decl., ECF No. 141, at ¶ 23.) This amount constitutes a substantial recovery in light of the type of claim, Class Counsel's evaluation of the classes' payroll and time records, and the risks of continued litigation. (Murshid Decl., ECF No. 141, at ¶ 24.) Beyond this, the Agreement is structured to maximize payment to participating class members by automatically issuing payments for class members who do not exclude themselves from the Rule 23 Class because these payments are made without any requirement to file a claim. (Murshid Decl., ECF No. 141, at ¶ 25.)

### 2.   The Agreement was reached through extensive arm's length negotiations.

Despite the Parties' divergent views regarding the Plaintiffs' assertions in their Complaint, they were able to work toward a compromise in this matter and negotiate at arm's length to resolve the claims of Plaintiff and putative class members. (Murshid Decl., ECF No. 141, at ¶ 26; Johnson Dec., ECF No. 142, at ¶5.) The Parties engaged in three full days of mediation over the course of a year, with two different mediators, including a retired Magistrate Judge from the Eastern District of Wisconsin. (Murshid Decl., ECF No. 141, at ¶ 27; Johnson Dec., ECF No. 142, at ¶6.) Furthermore, even after mediation sessions ended, the Parties continued to engage Judge Jones to assist in identifying and compromising various terms and conditions of the settlement between June 2021 and October 2021. (Murshid Decl., ECF No. 141, at ¶ 28; Johnson Dec., ECF No. 142, at ¶7.)

12

3.    **The settlement fund provides adequate relief for the settlement classes and the proposed allocation method equitably divides the settlement funds.**

The proposed settlement allocation, attached as Exhibit A to the Agreement, lists the amount of the Settlement Fund that each participating settlement class member will receive. (ECF No. 138-1.) As stated above, the average recovery is $444.42 after attorneys' fees, costs, and service payments. (Murshid Decl., ECF No. 141, at ¶ 29.) This is a substantial recovery in light of the part-time nature of the jobs at issue and type of claim and a fair amount given the risks in the case, including the risk that Plaintiff and putative class members would receive nothing at trial. (Murshid Decl., ECF No. 141, at ¶ 30.) As noted, EatStreet has strongly opposed multiple aspects underlying the theories on which Plaintiffs' alleged claims and damages are based.

Notwithstanding the disputed issues, the settlement allocation has been calculated in the most precise manner possible. (Murshid Decl., ECF No. 141, at ¶ 31.) As stated above, Class Counsel created an alleged damages model based on the data provided by EatStreet, which classified potential recovery in three separate categories: minimum wages, overtime wages and agreed-upon wages.

For minimum wages, using EatStreet's geolocational mileage and pay data, Class Counsel was able to input exact mileage of individual drivers in particular pay periods throughout most of the statutory period. (Murshid Decl., ECF No. 141, at ¶ 32.) Class Counsel analyzed such data on a market-by-market and pay period-by-pay period basis. (Murshid Decl., ECF No. 141, at ¶ 33.) Each driver's miles were

multiplied by the IRS mileage reimbursement rates for the applicable year to determine alleged expenses incurred by the drivers in a particular pay period. (Murshid Decl., ECF No. 141, at ¶ 34.) Class Counsel also calculated the available tip credit for the class members by comparing the base rates in each market to the applicable minimum wage rate under the FLSA and multiplying the difference by the total hours in a pay period to determine the maximum allowable tip credit. (Murshid Decl., ECF No. 141, at ¶ 35.) Class Counsel's calculation then took the total pay from EatStreet in a pay period, subtracted the full amount of tips that EatStreet's claims as wages, added back in tips allowed to be claimed as a tip credit, and finally subtracted the drivers' expenses for that pay period. (Murshid Decl., ECF No. 141, at ¶ 36.) That resulted in an adjusted gross wage amount that, once divided by the total hours in the pay period, showed the effective hourly rate of each driver in each pay period. (Murshid Decl., ECF No. 141, at ¶ 37.) Where that amount fell below the minimum wage of $7.25 per hour, Class Counsel calculated alleged damages by multiplying the difference by the total hours in the pay period. (Murshid Decl., ECF No. 141, at ¶ 38.) Alleged liquidated damages were added in an equal amount. (Murshid Decl., ECF No. 141, at ¶ 39.).

For alleged overtime damages, Class Counsel considered whether there were overtime hours listed in a particular pay period as well as whether a minimum wage violation occurred in the same pay period. (Murshid Decl., ECF No. 141, at ¶ 40.) Due to the nature of Plaintiffs' allegations as to how state and federal tip credits should apply in this case, if Plaintiffs alleged that a minimum wage violation

14

had occurred in a pay period, alleged overtime damages were calculated by multiplying the half-time overtime time of the minimum wage ($10.875 -- $7.25 = $3.625) by each overtime hour worked in the pay period. (Murshid Decl., ECF No. 141, at ¶ 41.) In other instances, alleged damages were calculated by multiplying the effective regular rate by time and a half and subtracting the overtime pay paid by EatStreet in the pay period. (Murshid Decl., ECF No. 141, at ¶ 42.) Alleged liquidated damages were calculated in an amount equal to the results of those calculations. (Murshid Decl., ECF No. 141, at ¶ 43.)

Finally, for putative class members that worked in Wisconsin since March 26, 2018, Class Counsel calculated the alleged agreed-upon wage damages. (Murshid Decl., ECF No. 141, at ¶ 44.) Class Counsel first multiplied the total hours in a pay period by the alleged guaranteed minimum pay for a particular market as provided by EatStreet. (Murshid Decl., ECF No. 141, at ¶ 45.) For overtime hours, Class Counsel multiplied those hours by 0.5 the guaranteed rate. (Murshid Decl., ECF No. 141, at ¶ 46.) Those results were added together to determine the minimum agreed-upon wages that EatStreet was obligated to pay under Wisconsin law for a pay period. (Murshid Decl., ECF No. 141, at ¶ 47.) Class Counsel then determined if that amount fell below the total wages paid by EatStreet in that pay period (inclusive of all tips but subtracting the drivers' expenses incurred). (Murshid Decl., ECF No. 141, at ¶ 48.) If the alleged minimum agreed upon wages amount fell below the total wages paid including tips but less expenses, the difference became the alleged damages for that pay period. (Murshid Decl., ECF No. 141, at ¶ 49.)

15

Civil penalties were also calculated at 50% of the damages. (Murshid Decl., ECF No. 141, at ¶ 50.)

Each individual's total potential alleged damages were tallied for the entire statutory period divided by projected total damages to determine that individual's pro-rata percentage of the potential damages. (Murshid Decl., ECF No. 141, at ¶ 51.) That percentage was multiplied by the portion of the net settlement funds to determine each person's *pro rata* portion of the settlement. (Murshid Decl., ECF No. 141, at ¶ 52.)

EatStreet strongly opposed Plaintiffs' theories and methods for calculating certain damages within its formulas, including the amount of a tip credit available, the proper mileage reimbursement rate, the regular rate of pay, the alleged agreed-upon wage, and alleged liquidated damages.  The ultimate formula used to settle this matter was the result of extensive arm's length negotiations over such matters to reach a compromise formula that accounted for the various disputed calculation methods. (Murshid Decl., ECF No. 141, at ¶ 53.)

The Parties believe this is the most reasonable and fair method to allocate damages to the class members as it allocates the settlement based on the hours worked, miles driven, and specific dates of employment during the statutory period. (Murshid Decl., ECF No. 141, at ¶ 54.) Each class member's *pro rata* portion was divided into three, proportional payments according to the agreed-upon installments and split amongst W2 wage and 1099 income as provided by the FLSA and Wisconsin law. (Murshid Decl., ECF No. 141, at ¶ 55.)

16

#### 4.    The requested service payment is reasonable.

The Seventh Circuit recognizes that enhancement/service payments are appropriate in circumstances such as those presented by this case. It looks to the following relevant factors: actions plaintiff took to protect the class's interests, degree to which the class benefitted from those actions, and the amount of time and effort plaintiff expended in pursuing litigation. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). The proposed award in this case is reasonable in comparison to awards approved by other courts in this Circuit. *See e.g., Berger v. Xerox Corp. Ret. Income Guarantee Plan,* No. 00-584-DRH, 2004 U.S. Dist. LEXIS 1819, at *7 (S.D. Ill. Jan. 22, 2004) (awarding $20,000.00 to the named plaintiff).

The Agreement provides that Plaintiffs Martin, Quattrucci and Jones will receive a service payment in recognition of their efforts as well as the benefit each class member derived from their individual efforts. (Murshid Decl., ECF No. 141, at ¶ 56.) A service payment of $7,000.00 to Plaintiff Martin is fair and reasonable given the efforts undertaken and risks assumed by Plaintiff Martin in initiating litigation and securing a recovery on behalf of himself as well as on behalf of an estimated 925 individuals[3] in the classes. (Murshid Decl., ECF No. 141, at ¶ 57.) Plaintiff Martin took the risk to initiate the lawsuit on the behalf of the Class Members and has consistently provided information to Class Counsel and represented the classes' interests over nearly two years since litigation was commenced. (Murshid Decl., ECF No. 141, at ¶ 58.) Specifically, Plaintiff Martin

---

[3] Excluding the Plaintiffs Martin, Jones and Quattrucci.

17

has provided Class Counsel with documents and significant amounts of information regarding EatStreet's pay practices, had dozens of phone calls with Class Counsel regarding the strategic planning of the litigation to ensure an outcome that would benefit the class, and even met with Judge Jones for over an hour to ask precise and pointed questions about the settlement to the ultimate benefit of the classes. (Murshid Decl., ECF No. 141, at ¶ 59.) He has been involved on an almost weekly basis with the litigation. (Murshid Decl., ECF No. 141, at ¶ 60.)

Similarly, service payments to Plaintiffs Quattrucci and Jones of $40,00.00 each are fair and reasonable given their efforts in providing additional information and witness contact information for this litigation. (Murshid Decl., ECF No. 141, at ¶ 61.) Their information proved critical to the Parties' ability to evaluate the claims and were instrumental in Plaintiffs' conditional certification motion. (Murshid Decl., ECF No. 141, at ¶ 62.) Their information was also important to the evaluation of the Rule 23 Class's claims. (Murshid Decl., ECF No. 141, at ¶ 63.)

The total amount of the services payments, which are 1.9% of the net Settlement Fund after attorneys' fees and costs, is reasonable and well within the range of similar service payments approved by courts in the Eastern District. *See Johannsen v. Argon Industries*, E.D. Wis. Case No. 2:15-cv-01080-JPS, ECF No. 70 (July 15, 2016) (order approving enhancement awards totaling 10.45% of class fund with 6.8% going to the named plaintiff); *Johannsen v. Lyall Manufacturing*, E.D. Wis. Case No. 2:15-cv-00897-DEJ, ECF Nos. 45, 45-1 (September 12, 2016) (order approving FLSA settlement agreement with 10% of the class funds going to the

named plaintiff); *Hernandez v. La Fuente Ltd.*, E.D. Wis. Case No. 2:13-cv-00366-RTR, ECF No. 102 (November 15, 2014) (order approving FLSA settlement agreement with enhancement payments totaling 6.1% of the class funds with 3.8% going to the named plaintiff); *McReynolds v. Merrill Lynch*, N.D. Ill. Case No. 1:05-cv-6583, ECF No. 616 (Dec. 6, 2013) (order approving class $250,000 service payment to each Class representative and $75,000 to each of the six members of the steering committee). Accordingly, the Parties submit that the service payments to Plaintiffs Martin, Quattrucci and Jones are fair and reasonable under the circumstances and request that the Court approve them.

### 5.   The requested attorneys' fees and costs are reasonable.

Attorneys' fees and costs are recoverable under the FLSA and state wage and hour statutes at issue in this litigation. *See* 29 U.S.C. § 216(b); Wis. Stat. §109.03(6). Class Counsel accepted the case on a 1/3 contingency basis, exclusive of costs, bearing the entire risk in the event that there was no recovery resulting from either a failure of proof at trial, or EatStreet's inability to satisfy a judgment. (Murshid Decl., ECF No. 141, at ¶ 64.) When Class Counsel accepted this case, it was unknown whether this matter could be resolved early in the litigation, or if substantial motion practice and trial would be necessary. (Murshid Decl., ECF No. 141, at ¶ 65.) Importantly, under the terms of their legal services agreement, Class Counsel would receive no payment for attorneys' fees or reimbursement for costs incurred if the litigation was unsuccessful. (Murshid Decl., ECF No. 141, at ¶ 66.) Despite this risk, Class Counsel has incurred considerable costs in expert fees and

other costs as a result of their advocacy on behalf of the class. (Murshid Decl., ECF No. 141, at ¶ 67.)

The Court should award attorneys' fees as a percentage of the total settlement because that arrangement, based on Class Counsel's agreement with the Plaintiff, most closely replicates the market for the legal services provided. *See* ) ("[M]ost suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis…The typical contingent fee is between 33 and 40 percent."); *Goodell v. Charter Communs., LLC , No. 08-cv-512-bbc, 2010 U.S. Dist. LEXIS 85010 (W.D. Wis. Aug. 17, 2010*, Crabb, J.); *Andler v. Associated Bank Corp.*, No. 11-cv-79, dkt. # 70 (W.D. Wis. Jan. 23, 2012, Conley, J.); *Bates v. Kerry, Inc.*, No. 13-cv-142, dkt. # 161 (W.D. Wis. Jan. 9, 2014, Conley, J.); *Fosbinder-Bittorf v. SSM Health Care of Wis. , No. 11-cv-592-wmc, 2013 U.S. Dist. LEXIS 152087 (W.D. Wis. Oct. 23, 2013*, Conley, J.); *Berndt v. Cleary Bldg. Corp. , No. 11-cv-791-wmc, 2013 U.S. Dist. LEXIS 171316 (W.D. Wis. Dec. 4, 2013*, Conley, J.); *Wittemann v. Wisconsin Bell, Inc.*, No. 09-cv-440, dkt. # 186 (W.D. Wis. Mar. 14, 2011, Crabb, J.); *Holmes v. Roadview, Inc.*, No. 15-cv-004, dkt. # 68 (W.D. Wis. Aug. 1, 2016, Peterson, J.); *Nordgren v. Epic Systems*, No. 13-cv-840, dkt. # 88 (W.D. Wis. March 20, 2015, Crabb, J.); *Venechuk v. Grande Cheese Co.*, No. 3:13-cv-54, dkt # 27 (W.D. Wis. Nov. 20, 2013, Crabb, J.); *Denk v. Pine Ridge Assisted Living, et al.*, No. 3:11-cv-00210, dkt. # 81 (W.D. Wis. Aug. 7, 2012, Conley, J.); *Black v. Renaissance Learning, Inc.*, No. 3:15-cv-635, dkt. # 70 (W.D. Wis. February 9, 2017, Peterson, J.); *Wilcox v. Alternative Entm't, Inc.*, No. 09-cv-659, dkt. # 175 (W.D. Wis. Mar. 8, 2011, Crabb, J.); *Webb v. Midwestern Wheels,* 15-cv-1538,

ECF No. 40 (June 9, 2016) (order approving 1/3 contingency fee in multi-plaintiff FLSA settlement); *Adams, et al. v. Walgreen Co. d/b/a Walgreens*, 14-cv-1208-JPS, ECF No. 35 (July 15, 2015) (same); *Hernandez v. La Fuente, Ltd.*, 13-CV-366-RTR, ECF No. 102 (E.D. Wis. Oct. 15, 2014) (same); *Beierle et al. v BR Metal Technology*, 13-CV- 01280-CNC, ECF No. 40 (E.D. Wis. June 26, 2014) (same); *Trujillo et al., v. Saelens' Corp.*, 13-CV-1096-JPS, ECF No. 25, 37 (E.D. Wis. May 15, 2014) (same); *McKinney v. Med Group Transportation, LLC, et al.*, 13-CV-222-JPS, ECF Nos. 89, 90, 91, 92, (E.D. Wis. Feb. 7, 2014) (same); *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate'"); *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452 (RLE), 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) (33.33% award consistent with norms of wage litigation).

To date, Class Counsel has worked well over 700 hours on this case, which has included extensive motion practice (motions to dismiss and conditional class certification), data analysis, preparing for and taking a corporate deposition; fielding questions from dozens of opt-in plaintiffs and preparing for and working through months of mediation and negotiations. (Murshid Decl., ECF No. 141, at ¶ 68.) Accordingly, Class Counsel seeks one-third of the total value of the settlement as compensation for its fees. (ECF No. 138-1.) The total value of the settlement is $1,240,000.00, and 33.33% of that amount is $413,333.34. (Murshid Decl., ECF No. 141, at ¶ 69.) The Agreement provides for attorneys' fees of $413,333.34 (ECF No. 138-1.) An award of 33.33% falls within the normal percentage range of attorneys'

fee awards approved by courts. *See* 4 Newberg on Class Actions § 14:6, p. 558 (4th ed.15 2002) (citing a 1996 Federal Judicial Center Study finding that fee awards in common fund class actions were between 20% and 40% of the gross monetary settlement). Class Counsel faced significant risks in this litigation, based upon the strength of the legal and factual defenses asserted by EatStreet as well as the risks incident to obtaining satisfaction of any future judgment. (Murshid Decl., ECF No. 141, at ¶ 70.)

As provided for in the Agreement, Class Counsel will file with the Court a more detailed brief in support of its request for attorneys' fees at a date specified by the Court and not less than seven days prior the Final Fairness Hearing so that the Court will be able to approve Class Counsel's fees and costs at the Fairness Hearing.

II.    **Because the putative Rule 23 class satisfies the standards required by the courts, the Parties' FED. R. CIV. P. 23 class should be certified.**

A.    **The putative class satisfies the implicit standard of definiteness required by Courts.**

In addition to the FED. R. CIV. P. 23(a) and 23(b) standards, courts require that the implicit standards for certification be met. The proposed class definition must be definite – that is, ascertainable, precise and objective. *Blihovde v., St. Croix,* 219 F.R.D. 607, 614 (W.D. Wis. 2003). Plaintiff must also be a member of the class he represents.

Here, the members of the Rule 23 Class are definite. The Parties have identified these individuals, have produced discovery, mileage and payroll records

regarding them, and have calculated their potential damages. The Rule 23 Class definition does not include any subjective criteria. The Rule 23 Class includes all persons who worked in Wisconsin as delivery drivers for EatStreet between March 26, 2018 and June 19, 2021 and whose names appear on Exhibit A to the Settlement Agreement. Plaintiffs are members of the classes they represent, worked for EatStreet, and were subject to the pay practices at issue in the Complaint. (Murshid Decl., ECF No. 141, at ¶ 71.)

**B.    Plaintiffs have satisfied the FED. R. CIV. P. 23(a) standards of numerosity, commonality, and typicality and, with their counsel, will fairly and adequately protect the interests of the Rule 23 Class.**

**1.    The Parties' proposed Rule 23 Class satisfies the numerosity requirement of FED. R. CIV. P. 23(a).**

The Seventh Circuit has held that the numerosity requirement of FED. R. CIV. P. 23(a) requires a showing that the number of members in the proposed class is so large as to make joinder impracticable. *Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 663-4 (7th Cir. 2004). Based on information provided by EatStreet, there are 928 members of the Rule 23 Class (including Plaintiffs). (Murshid Decl., ECF No. 141, at ¶ 72.) It would be administratively untenable to join each individual class member in this action and, therefore, numerosity has been met in this matter.

**2.    Because all of EatStreet's hourly delivery drivers were subject to the same fundamental pay practices, common questions of law and fact predominate and therefore, satisfy the commonality requirement.**

23

Rule 23(a) requires a finding that there are questions of fact or law which are common to the class. FED. R. CIV. P. 23(a)(2). This requires plaintiffs to show that they have all suffered the same injury, a "common contention" such that resolving the common issue will resolve all of the included claims in a single stroke. *Wal-Mart v. Dukes,* 131 S. Ct. 2541, 2551 (2011) ("What matters to class certification . . . is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." (internal citations omitted)); *Williams-Green v. J. Alexander's Rests., Inc.*, 277 F.R.D. 374 (N.D. Ill. 2011) ("[Plaintiff] has demonstrated that her claims . . . arise from a common nucleus of fact based upon standardized conduct and, therefore, has satisfied the commonality requirement of Rule 23(a)(2).").

Questions common to the Class include:

- Whether EatStreet's alleged failure to reimburse the Rule 23 Class for vehicle expenses incurred in the course of performing their duties as delivery drivers violated Wisconsin law; and

- Whether EatStreet's alleged use of a tip credit when calculation wages for the Rule 23 class resulted in minimum wage violations under Wisconsin law;

- What measure of damages the Rule 23 Class would be entitled to recover – in the event that violations were proven – given uncertainties in Wisconsin law.

The common questions of law and fact, as alleged in the Complaint, are sufficient to meet the FED. R. CIV. P. 23(a)(2) standard as they arise from a common nucleus of operative fact, namely EatStreet's practice for reimbursing vehicle expenses.

24

### 3. Plaintiffs' claims satisfy the typicality requirement as they are legally and factually similar to the putative Rule 23 Class members' claims.

The typicality requirement is closely related to the question of commonality. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and his or her claims are based on the same legal theory. *De La Fuente v. Stokley-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983). "The typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs . . . who can advance the same factual and legal arguments may be grouped together as a class." *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 341 (7th Cir. 1997). The typicality requirement, however, focuses only on whether the plaintiff's claim is based on the same legal theory and arises from the same course of conduct that gives rise to the claims of the other members of the proposed class. *Rosario*, 963 F.2d at 1018. Typicality focuses on EatStreet's actions leading to the alleged violation and not on possible particularized defenses against certain individual class members. *Wagner v. NutraSweet Co.,* 95 F.3d 527, 534 (7th Cir. 1996).

Plaintiffs are members of the Rule 23 Class. The legal theories advanced by Plaintiffs—that EatStreet's method of accounting for vehicle or mileage expenses and calculation of tip credits resulted in minimum wage, overtime and agreed-upon wage damages — applies equally to Plaintiffs and the class members they seek to represent. Because Plaintiffs' claims involve the same legal theories and arise from

25

the same course of conduct that gives rise to the claims of the Rule 23 Class

members, the typicality element has been satisfied.

>    **4.    Plaintiffs and Class Counsel will fairly and adequately
>           protect the interests of the Rule 23 Class.**

The final inquiry under Rule 23(a) consists of two parts: (1) the adequacy of

Class Counsel; and (2) the adequacy of representation provided in protecting the

different, separate and distinct interests of the Rule 23 Class members. *Retired

Chicago Police Ass'n v. Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quoting *Sec'y of

Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986) (*en banc*)).

Hawks Quindel, S.C. seeks to represent the Rule 23 Class. Hawks Quindel,

S.C., has served as class counsel in over one-hundred similar wage and hour

disputes in front of this Court, as well as the Eastern District of Wisconsin, and is

experienced in handling complex wage and hour class actions. (Murshid Decl., ECF

No. 141, at ¶ 73.)

Further, Plaintiffs do not have any antagonistic or conflicting interests with

the class members he seeks to represent. Plaintiffs allegedly have been injured by

the same conduct as the class members they seek to represent and seek

compensation on their own behalf and on behalf of the class members they seek to

represent for those injuries. Plaintiffs have thus satisfied the requirements of

Fed. R. Civ. P. 23(a).

>    **C.    Plaintiffs have satisfied the Fed. R. Civ. P. 23(b) standards
>           because common questions of law and fact predominate
>           over any individualized inquiries and because judicial
>           economy is enhanced by class treatment.**

26

In addition to meeting the FED. R. CIV. P. 23(a) standards, Plaintiffs must satisfy one of the FED. R. CIV. P. 23(b) standards. Where, as is the case in this matter, Plaintiffs seek monetary damages, the inquiry properly focuses on FED. R. CIV. P. 23(b)(3). *Blihovde*, 219 F.R.D. at 619.

Under FED. R. CIV. P. 23(b)(3), certification of the class is proper where questions of law or fact common to the entire class predominate over individual claims and a class action is superior to other methods for fair and efficient adjudication. FED. R. CIV. P. 23(b). The Seventh Circuit has summarized this standard by stating that, "class action treatment is appropriate and permitted by Rule 23 when judicial economy from the consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for a decision by a single judge or jury." *Mejdrech v. Met-Coil Sys. Corp.,* 319 F.3d 910, 911 (7th Cir. 2003).

### 1.    Common questions of law or fact predominate.

The question to be answered here is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Blihovde*, 219 F.R.D. at 620 (*citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). When challenging a uniform policy, the validity of those policies predominate over individual issues and class certification is appropriate. *Id. (citing Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 147 n. 20 (1982)). Further, where a uniform policy is challenged, individual inquiries into the application of that policy to an individual within the class will not supplant predominance. *Id.*

Through this settlement, the Parties have resolved a dispute regarding EatStreet's common method of accounting for Plaintiffs' vehicle expenses incurred and tip credits available in the performance of their work, which Plaintiffs allege violated the law. Because the practices were uniformly applied to the class members, and because this settlement resolves the Parties' disputes over these practices, common issues predominate in this matter, and the FED. R. CIV. P. 23(b)(3) standards have been met.

### 2. Class resolution is the superior method of resolving these claims.

The final FED. R. CIV. P. 23(b)(3) requirement, superiority, also has been met in this case. In evaluating superiority, the Court considers (1) the interests of the class members in controlling the prosecution of their own claims; (2) the existence of other pending litigation related to the same controversy; (3) the desirability of concentrating the claims in one forum; and (4) the difficulty of managing the class. FED. R. CIV. P. 23(b)(3).  Neither Plaintiffs nor EatStreet are aware of any other pending federal litigation regarding this controversy. (Murshid Decl., ECF No. 141, at ¶ 74; Johnson Dec., ECF No. 142, at ¶8.) For those individuals who are subject to arbitration agreements, their claims have been properly removed and they are not Parties to the Settlement Agreement as they are no longer included in the federal litigation. (Murshid Decl., ECF No. 141, at ¶ 75; Johnson Dec., ECF No. 142, at ¶9.) To the extent those arbitrations are resolved, it will in no way impact the Settlement Agreement in this matter. (Murshid Decl., ECF No. 141, at ¶ 76; Johnson Dec., ECF No. 142, at ¶10.)

The desirability of class resolution in this case is readily apparent by the size of the class represented and by the nature of the alleged violation. The challenged policy allegedly harmed each member of the putative class; however, the putative class members' individual interests in prosecuting these claims is relatively small given the alleged monetary value of each individual's claim. To the extent that any class member would prefer to litigate his or her claim separately, the class mechanism will provide him/her an opportunity to opt out of the Rule 23 Class and do so. Moreover, because the size of each class member's claim is relatively small, individual adjudication of the claims is inefficient and unlikely.

Because a class is a superior method for resolving this dispute, Plaintiffs request that this FED. R. CIV. P. 23 class be certified.

### D.     The Parties' proposed notice and manner of service are appropriate.

In order to protect the rights of absent members of a settlement class, the Court must provide the best notice practicable to all members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1985). Such a notice should define the class, describe clearly the options open to the class members and deadlines for taking action, describe the terms of the proposed settlement, disclose any special benefits provided to class representatives, provide information regarding attorneys' fees, indicate the time and place of the fairness hearing, explain the procedure for distributing settlement funds, provide information that will enable the class members to calculate individual recoveries, and prominently display the address

and telephone number of class counsel and the procedure for making inquiries.
Manual for Complex Litigation at § 21.312.

The class notice, attached as Exhibit C to the Parties' Agreement, meets each
of the above criteria and allows the collective class members an opportunity to
assert their claims in advance of each settlement installment. (ECF No. 138-3.)
Finally, Class Counsel has retained a Third-Party Administrator to streamline and
facilitate the notice and payment process for the class members. (Murshid Decl.,
ECF No. 141, at ¶ 77.)

## III.    Because the putative collective class satisfies the standards required by the courts, the Parties' 29 U.S.C. § 216(b) collective action should be certified.

Some courts have held that court approval of FLSA collective action
settlements is necessary to effectuate a valid and enforceable release of the FLSA
claims asserted by the Plaintiff. *See Lynn's Food Stores, Inc.,* 679 F.2d at 1352. If
the settlement reflects a reasonable compromise over issues that are actually in
dispute, the Court may approve the settlement "in order to promote the policy of
encouraging settlement of litigation." *Id.* at 1354.

By participating in this collective action settlement through the completion
and return of a consent form, each class member can tap into the efficiencies and
economics of the collective action device, which enables workers with low-dollar
individual claims to pursue their FLSA rights by pooling resources with similarly-
situated workers. *See Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S.
326, 339 (1980) ("[w]here it is not economically feasible to obtain relief within the

traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device").

An action under the FLSA may be maintained against "any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29. U.S.C. § 216(b). The FLSA does not contain a definition of "similarly situated." To determine if the putative class members are similarly situated to each other, courts look to:

- whether the factual and employment settings of the individual plaintiffs are similar or disparate;

- whether the employer may assert various defenses that appear to be individual to each plaintiff; and

- whether fairness and procedural considerations support proceeding as a collective action.

*Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625-bbc, 2011 U.S. Dist. LEXIS 56062, *14 (W.D. Wis. May 23, 2011) *quoting Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1103 (11th Cir. 2001); *Russell v. Ill. Bell Tel. Co.,* 721 F. Supp. 2d 804, 811 (N.D. Ill. 2010).

With respect to the Collective Class, the Complaint alleges the same violation of law—that EatStreet's failure to reimburse its delivery drivers for vehicle expenses incurred in the performance of their job duties, denied Plaintiffs and the FLSA Collective Class minimum and overtime wages. Plaintiffs allege that this policy applied to all putative Collective Class members. Plaintiffs will adequately represent the interests of the Collective Class because they are similarly situated to

31

the class members in that they were employed by EatStreet as delivery drivers during the relevant statutory period and were subject to the same pay practices as other class members.

In the instant case, EatStreet's primary defenses are the same as to each of the Collective Class members, and therefore those primary defenses are not individualized. Moreover, all Collective Class members were required to use their personal vehicles in the performance of their job, so their employment settings are similar. Finally, fairness and procedural concerns support moving forward as a collective action. It would better serve the Parties and the Court to resolve the claims of the Opt-In Plaintiffs in one fell swoop rather than litigate hundreds of individual actions. Certification of the Collective Class at this time is appropriate under 29 U.S.C § 216(b). Moreover, judicial economy is served by so proceeding as a collective action.

## <u>CONCLUSION</u>

For the above stated reasons, the Parties jointly request that the Court grant preliminary approval of the Agreement, approve the Parties' Joint Stipulations for Class Certification pursuant to Fed. R. Civ. P. 23 (ECF No. 140) and Collective Class Certification pursuant to 29 U.S.C. 216(b)(ECF No. 139), approve Plaintiffs Kristoffer Martin, Scott Quattrucci and Calvin Jones as representatives for the classes, approve Hawks Quindel, S.C. as counsel for the classes, and approve the mailing of the notices of class action settlement (ECF No. 138-3).

Dated this 17th day of December 2021.

Respectfully submitted,

 s/Benjamin T. Johnson
Benjamin T. Johnson, #1089033

MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street, Suite 3200
Chicago, IL 60606
Telephone: 312.222.0800
Facsimile: 312.222.0818
Email:  btjohnson@michaelbest.com

Emi M. Passini, #1101454
Paul E. Benson, #1001457

MICHAEL BEST & FRIEDRICH LLP
790 North Water Street, Suite 2500
Milwaukee, WI 53202
Telephone: 414.271.6560
Facsimile: 414.277.0656
E-mail: empassini@michaelbest.com
          pebenson@michaelbest.com

Attorneys for EatStreet

Respectfully Submitted,

 s/Summer H. Murshid
Larry A. Johnson
WI Bar No. 1056619
Summer Murshid
WI Bar No. 1075404
Timothy Maynard
WI Bar No. 1080953
Nathan T. Caputa
WI Bar No. 1115499

Hawks Quindel, S.C.
222 East Erie, Suite 210
P.O. Box 442
Milwaukee, WI  53201-0442
Telephone: 414-271-8650
Fax: 414-271-8442
E-mail:  ljohnson@hq-law.com
          smurshid@hq-law.com
tmaynard@hq-law.com
ncaputa@hq-law.com

Attorneys for Plaintiffs

19364706.2

33