IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KRISTOFFER MARTIN, SCOTT QUATTRUCCI,
and CALVIN JONES, individually
and on behalf of others similarly situated,

Plaintiffs,                                         OPINION and ORDER

v.                                                       20-cv-279-jdp

EATSTREET, INC.,

Defendant.

---

Plaintiffs Kristoffer Martin, Scott Quattrucci, and Calvin Jones bring this proposed class and collective action against defendant EatStreet, Inc., an online food ordering and delivery service company. Plaintiffs contend that EatStreet violated the Fair Labor Standards Act (FLSA) and Wisconsin wage law when it failed to reimburse delivery drivers for vehicle and mileage expenses and when it used drivers' tips to meet minimum wage requirements. Dkt. 84.

The parties have filed renewed joint motions for class certification under Federal Rule of Civil Procedure 23, Dkt. 152, certification of a collective under 29 U.S.C. § 216(b), Dkt. 151, and preliminary approval of a proposed settlement agreement, Dkt. 150. The court denied the parties' first motion for preliminary approval because the parties' filings didn't allow the court to conclude that it "will likely be able to" approve the settlement, as required by Rule 23(e)(1)(B). *See* Dkt. 147. The court is now persuaded that the parties have satisfied the standard for preliminary approval, so the court will grant the motions. The plaintiffs are directed to send notice to the class and collective after making three modifications. The court will set a final approval deadline and schedule a fairness hearing to be held by videoconference.

ANALYSIS

## A. The court's concerns

The court raised two sets of concerns in its order denying the parties' initial preliminary approval motions: (1) the parties' proposed state-law class and FLSA collective definitions were unclear, and (2) the parties didn't adequately show that the proposed settlement is fair.

### 1. The proposed class and collective definitions

The parties' original proposed class and collective definitions both referred to an exhibit that listed proposed individual class and collective members, their awards, and their pro-rata shares of the settlement. But the parties didn't explain who was listed on the exhibit, how those individuals were identified, and whether the class or collective included individuals who were not on the list. The parties also didn't explain why the class and collective definitions were worded differently, and whether there was a substantive difference between the two definitions.

In their renewed motions, the parties propose new class and collective definitions and provide more information on who is in the proposed class and collective. The new proposed state-law class definition is:

> All EatStreet delivery drivers who were employed in Wisconsin between March 26, 2018 and June 19, 2021 who did not sign an arbitration agreement.

Dkt. 150, at 3. The new proposed FLSA collective definition is:

> All EatStreet delivery drivers who were employed in Wisconsin between March 26, 2017 and June 19, 2021 who did not sign an arbitration agreement, and those EatStreet delivery drivers who have already opted into this matter.

*Id.*

The parties' new definitions clearly define the class and collective with objective criteria, so they satisfy the first requirement for certification. *See Mullins v. Direct Digital*, LLC, 795 F.3d

654, 657 (7th Cir. 2015) (class must be clearly defined with objective criteria). The class definition includes all individuals who worked as delivery drivers for EatStreet in Wisconsin during an approximately three-year period and who did not sign an arbitration agreement. There are two differences between the proposed class definition and the proposed collective definition. First, the collective definition spans a longer period, which the parties say is to account for the FLSA's three-year statute of limitations. Dkt. 150, at 4. Second, the collective definition includes EatStreet drivers who have already opted into the collective.

Neither difference poses a problem for the purpose of preliminary approval. But one remaining concern is that the court has been unable to determine which individuals have already opted in. Specifically, the parties submitted a list of potential class and collective members that they contend includes "all individuals meeting [both] definitions." *Id.*, at 3. The list identifies by name the individuals who the parties say are the current opt-in plaintiffs. *Id.*, at 2 n.2. However, that list doesn't include the names of individuals who previously filed signed consent-to-join forms. Some opt-in plaintiffs' claims were compelled to arbitration, Dkt. 83, but there are individuals who submitted consent forms and whose names do not appear on either the arbitration list or the current opt-in list. *See, e.g.*, Dkt. 36 (consent forms signed by individuals Getnet, Mukiza, Nwachukwu, Paulino, and Soumahoro). In their final approval papers, the parties should specify who is in the FLSA collective, and if any individuals consented to join but are not in the collective, explain why they are not included.

## 2.  Fairness of the proposed settlement

Under the terms of the proposed settlement, EatStreet agrees to pay a total of $1,240,000. In their first motion for preliminary approval of the settlement, the parties explained that this total would include: (1) $413,333.33 in attorney fees; (2) no more than

3

$40,000 for costs; (3) a $50,000 reserve fund for ongoing costs of settlement administration; (4) $360,833.34 for the state-law class (the "Wisconsin Settlement Fund") from which each class member would receive a pro-rata share of the total; (5) $360,833.34 for the FLSA collective (the "FLSA Settlement Fund") from which each collective member will receive a pro-rata share of the total; and (6) a $7,000 incentive award for Martin, a $4,000 incentive award for Quattrucci, and a $4,000 incentive award for Jones. In its order denying the motions, the court asked the parties to explain the settlement in terms of the maximum recovery possible and the discount that members are getting in exchange for the settlement. The court also asked the parties to explain why they chose to create separate state-law and FLSA funds, and what portions of the damages are attributable to each of the plaintiffs' three theories of liability.

The parties have now provided enough information for the court to conclude for the purpose of preliminary approval that the settlement is fair and adequate. The plaintiffs' damages analysis calculated a best possible recovery of $4,543,130.56. That total included $709,996.71 in damages and civil penalties for agreed upon wage violations under Wisconsin law, $3,618,402.54 for minimum wage violations under Wisconsin law and the FLSA, and $214,731.31 for overtime wage violations under Wisconsin law and the FLSA. EatStreet's estimate for the plaintiffs' best possible recovery was $400,000. The $1,240,000 settlement therefore provides potential class and collective members with just over 27% of their maximum potential recovery.

The court will likely be able to find that the relief is adequate considering the costs, risks, and delay of trial and appeal. Since plaintiffs filed this suit in March 2020, the parties have briefed two motions to dismiss paving the way for three amended complaints, and briefed plaintiffs' motion for conditional certification. It's evident from those filings and from the

parties' renewed preliminary approval motion that this case presents contested and unsettled issues about the application of federal and state labor laws to the "gig economy." The settlement also resulted from extensive arm's length mediation efforts. The parties engaged in three separate day-long mediation sessions and several months of negotiations with a former magistrate judge. During these sessions, EatStreet shared financial information that persuaded the mediator that there was legitimate concern regarding EatStreet's ability to withstand a larger judgment. *See Black v. Renaissance Learning, Inc.*, No. 15-cv-635-jdp, 2016 WL 9460662, at *5 (W.D. Wis. Nov. 10, 2016) (listing defendant's ability to withstand a larger judgment as one factor in considering whether to approve a FLSA collective settlement). The parties therefore concluded that the prospect of expeditious resolution outweighed the risks and costs to both sides if the litigation continued.

One remaining issue relates to the allocation of payments to potential members of the class and collective. In their renewed motion for preliminary approval, the parties say they have revised their methods for calculating each potential member's pro-rata share of damages and for allocating payments between the Wisconsin Settlement Fund and the FLSA Settlement Fund. The new approach assigns each potential member a pro-rata percentage of the total settlement fund based on that individual's portion of the maximum potential recovery across all resolved claims. For individuals who are prospective members of both the class and the collective, their pro-rata portion of the settlement is allocated half to the FLSA Settlement Fund and half to the Wisconsin Settlement Fund. For individuals who are potential members of solely the collective, their entire pro-rata portion of the settlement is allocated to the FLSA Settlement Fund.[1]

_____

[1] The parties don't explain why, but apparently due to these changes, the sizes of the Wisconsin

The parties say that they chose this two-fund approach to account for the differing mechanisms by which FLSA claims and Wisconsin class claims are released (i.e., opt-in versus opt-out) and because the value of non-overlapping state-law and FLSA remedies is similar. But the court has concerns about the potential for differential treatment between members of the class and members of the collective. Under the parties' approach, if an individual is a potential member of both the class and the collective but chooses not to opt in to the collective, that individual will only receive half of their pro-rata share of the settlement, the half allocated to the Wisconsin Settlement Fund. Relatedly, an individual who chooses to opt in to the collective stands to receive more than their pro-rata share—and potentially much more if few people opt in—because unclaimed FLSA funds are reallocated to members of the collective. At the final approval stage, the parties should explain why their approach is fair to members of both the class and the collective considering the potential for disproportionately large payments to members of the FLSA collective.

Another issue relates to the reallocation of unused class funds. In their initial motion for preliminary approval, the parties said that the awards of Rule 23 class members who opt out of the class will be reallocated to the remaining class members. Dkt. 143, at 7. But the settlement agreement doesn't say anything about reallocating class members' shares to the rest of the class, it only says that about the FLSA collective. If it is true that the unused class funds will be reallocated, the parties should amend their settlement agreement to say so. If it is not

_____

Settlement Fund and the FLSA Settlement Fund changed slightly (to $359,857.68 and $361,774.78, respectively). Dkt. 150-1, at 2–3. At the final approval stage, the parties should explain what caused this change.

true, then at the final approval stage the parties should explain what will happen to class funds that are allocated to individuals who opt out.

The court also asked the parties to explain why some potential class and collective members are entitled to zero damages and why EatStreet's payments will be made in two installments. As for the zero damages issue, some individuals were employed by EatStreet in Wisconsin during the relevant period but never made deliveries or drove any miles because they didn't work any shifts after their orientation. So, those individuals fall within the class and collective definitions but didn't incur any damages. As for the two installments, the parties explained that the confidential financial information EatStreet shared during mediation persuaded the mediator and the plaintiffs that there was a reasonable basis to split EatStreet's payments into two fiscal quarters. The parties have adequately addressed the court's concerns on both issues.

## B.  Other Rule 23 requirements

For the limited purpose of preliminary approval, the court finds that the parties have satisfied the remaining requirements for class certification in Rule 23(a) and Rule 23(b)(3). The standards for certification of a collective overlap with the requirements of Rule 23, so the court likewise finds that conditional certification of the collective is appropriate. *See Espenscheid v. DirectSat USA*, LLC, 705 F.3d 770, 771–72 (7th Cir. 2013).

The court must also determine whether the proposed notice meets the requirements of Rule 23(c)(2). There are three aspects of the notice that the parties should change before issuing it to class and collective members. First, the notice states twice that it is intended for individuals who worked as EatStreet delivery drivers "between March 26, 2018 and June 19, 2021." Dkt. 150-3, at 1, 2. This should be changed to say "between March 26, 2017 and June

19, 2021" to account for the longer time span of the FLSA collective. Second, the notice states that $721,666.68 of the settlement fund will be distributed to class and collective members. *Id.*, at 3. But as discussed above, the sizes of the Wisconsin Settlement Fund and FLSA Settlement Fund have changed slightly, so the sum of both funds is now only $721,632.46. The parties should update the notice to reflect the correct amount. Third, the notice misspells the presiding judge's name and should be corrected. *See id.*, at 4 (referring to "Judge Pedersen").

One final point about the notice. Unlike a class action where the statute of limitations is tolled for potential class members at the time a complaint is filed, in FLSA collective actions potential collective members must opt in to the pending action or file a separate lawsuit to preserve their FLSA claims. 29 U.S.C. § 256; *Kelly v. Bluegreen Corp.*, No. 08-cv-401-bbc, 2008 WL 4962672, at *2 (W.D. Wis. Nov. 19, 2008)) ("In FLSA collective actions, potential class members have no shelter; to preserve their claims they must either file an opt-in consent form in a pending action or file a separate lawsuit before the statute of limitations has run."). Because of the time that has elapsed since the start of the period covered by the collective definition, potential collective members' FLSA claims may have expired by the time they receive the notice. As a result, some potential collective members may try to opt in to the collective even though the statute of limitations has run on their FLSA claims. The notice doesn't say anything about how the parties intend to address this situation should it arise. If it does, the parties should explain at the final approval stage how they will deal with individuals who opt in to the FLSA collective but whose claims have expired.

ORDER

IT IS ORDERED that:

1.  The parties' renewed motions for preliminary approval of the proposed settlement, Dkt. 150, conditional certification of a collective under 29 U.S.C. § 216(b), Dkt. 151, and certification of a class under Rule 23, Dkt. 152, are GRANTED.

2.  The parties may have until December 15, 2022, to correct the notice and disseminate the notice to the class and collective. The notice should provide class members 45 days to opt out, opt in, or object to the settlement.

3.  The parties may have until February 15, 2023, to file a motion for final approval of the settlement, attorney fees, and costs.

4.  The court will hold a fairness hearing by videoconference on March 3, 2023, at 10 a.m.

Entered December 1, 2022.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

9